WERDEGAR, J.
I respectfully dissent. In concluding the computer printouts at issue in this case fall within the official records exception to the hearsay rule (Evid. Code,[1] § 1280), the majority identifies no evidence produced by the proponent of the evidence at trial, here the People, that established the foundational requirement that “[t]he writing was made at or near the time of the act, condition, or event.” (§ 1280, subd. (b).) Neither document, therefore, qualified as an official record excepted from the hearsay rule. Accordingly, the trial court erred in admitting both documents into evidence against defendant Martinez.
I
The printout from the California Law Enforcement Telecommunications System (CLETS), which includes a computer database maintained by the State Department of Justice (Department), purports to be an accurate record of defendant’s prior felony convictions. The People offered it to prove the prior felony conviction enhancement allegations charged against defendant. As such, the CLETS printout was hearsay, i.e., it was “evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.” (§ 1200, subd. (a).) Although hearsay evidence is inadmissible unless it comes within a recognized exception, the majority finds section 1280, the official records *139 exception, applicable. That section provides: “Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following appl[y]: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness.”[2]
The critical question in this case concerns the second of the statutory requirements: was the writing “made at or near the time of the act, condition, or event”?[3] This requirement is important: requiring a public employee to write something down as part of his or her official duty, and to do so close in time to the actual event, supplies a degree of trustworthiness for the information that would otherwise be absent. In his treatise on the law of evidence, Justice Jefferson, speaking of the identical timeliness requirement in section 1271, the business records hearsay exception, explained: “Prompt recording after an event is required to ensure accuracy of recollection and recording. . . . The timeliness of the entry as a requirement ... is also emphasized by the additional requirement that the court must find that . . . the ‘time of preparation’ of the writing was such as to indicate trustworthiness. If a writing is made long after the act or event recorded, it cannot be considered as complying with either of these requirements.” (1 Jefferson, Cal. Evidence Benchbook (3d ed. 1998) § 4.8, p. 114.)
Because all three requirements in section 1280 must be met, failure to satisfy even one will take the CLETS computer printout outside the scope of the hearsay exception for official records. Although on appeal we apply the abuse of discretion standard when reviewing a trial court’s decision that evidence falls within a hearsay exception (People v. Jones (1998) 17 Cal.4th 279, 308 [70 Cal.Rptr.2d 793, 949 P.2d 890]), a trial court’s exercise of such discretion must be based on evidence and not on whim or caprice (see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 358, pp. 406-408 [explaining the “Limits of Legal Discretion”]). It is in this respect that I part company with the majority, for I find no evidence the information in the *140 CLETS computer printout was written “at or near the time of the act, condition, or event,” here, defendant’s prior felony convictions.
To satisfy the requirement the writing be made “at or near the time of the . . . event,” the majority relies on a number of statutes. These statutes, according to the majority, require law enforcement agencies to report conviction information to the Department in a timely manner and the Department, upon request, to provide such criminal history information to law enforcement agencies. In addition, according to the majority, these statutes set forth a legislative “purpose” (maj. opn., ante, at p. 127) that the Department create and maintain a database that will enable it to have “ ‘speedy access’ ” to “ ‘accurate and reasonably complete criminal offender record information.’ ” (Ibid., quoting Pen. Code, § 13100, subds. (a), (c).) From these premises, the majority concludes the Department has a statutory “duty” to record conviction information it receives into the CLETS computer database “ ‘within a short period of its receipt from the reporting agency.’ ” (Maj. opn., ante, at p. 127, italics added, quoting People v. Dunlap (1993) 18 Cal.App.4th 1468, 1479 [23 Cal.Rptr.2d 204].) Then, having discerned such a statutory “duty,” the majority invokes section 664’s evidentiary presumption that an official duty—the asserted duty to record the conviction information within a short time of receiving it—has been regularly performed.
The majority’s reasoning falters at the threshold, for its premises are unsound. Simply put, the several statutes on which the majority relies fail, both individually and collectively, to establish any “duty” on the part of the Department to enter conviction information into the CLETS computer database within a short time after receiving it. First, although the statutes on which the majority relies admittedly create a duty requiring law enforcement agencies timely to notify the Department—sometimes daily (Pen. Code, § 11107), sometimes within 30 days (Pen. Code, § 13151; see also Pen. Code, former § 11117 [Stats. 1972, ch. 1377, § 86, p. 2841])—of information concerning arrests, convictions and dispositions, none of these statutorily imposed “duties” speak to when the Department must then record that information into the CLETS computer database. It could be hours, days, weeks, or even months later.
Second, that the Department must, by law, respond to a request for information within 72 hours of receiving it, is irrelevant. (Pen. Code, §§ 13175, 13176.) The rules regarding time of access (i.e., retrieving and disseminating information) have little to do with when the information must first be recorded into the CLETS computer database. For example, the Department would be in full compliance with Penal Code sections 13175 and 13176 if it waited several weeks before recording conviction information into the database, so long as it responded to requests for information within the 72-hour time limit.
*141 Third, the Legislature’s stated “purpose” in authorizing creation of the CLETS computer system similarly fails to create a “duty” of a writing close in time to the conviction. Although the Legislature has declared the Department should create a computer database of criminal conviction information because law enforcement agencies require “accurate and reasonably complete criminal offender record information” (Pen. Code, § 13100) and need “speedy access” to such information (ibid.), and that the CLETS system be “established and maintained in a condition adequate to the needs of law enforcement” (Gov. Code, § 15151), these generally stated goals fail to impose on the Department an official “duty” to record the conviction information within a short time after receipt. For example, a court disposing of a case may forward that information to the Department within 30 days (Pen. Code, § 13151), and the Department might wait, for example, 60 additional days before recording that information into the CLETS computer database. One could reasonably conclude this procedure would result in a database that is “accurate and reasonably complete” (Pen. Code, § 13100) and yet still conclude the writing, made a full 90 days after the event, was not made “at or near the time of the . . . event” as required by section 1280, subdivision (b).[4] In short, the Legislature’s “purpose” in authorizing creation of the CLETS system, even considered together with its stated aspirations for the utility of that system, is simply too vague to permit the conclusion that these statutes imposed on the Department a legal “duty” to record conviction information “near the time” of the conviction.
Accordingly, none of the statutes addressing (1) the obligation of law enforcement agencies to report conviction information to the Department, (2) the obligation of the Department to respond within 72 hours to requests for information, or (3) the Legislature’s intention the CLETS system be an “accurate and reasonably complete” repository of “criminal offender record information” (Pen. Code, § 13100) establish an official “duty” on the part of the Department to record conviction information into the CLETS computer database within a short time after it receives that information from other law *142 enforcement agencies.[5] That being so, the presumption of an official duty regularly performed, set forth in section 664, does not apply.
The majority’s line of reasoning is similar to that applied in People v. Dunlap, supra, 18 Cal.App.4th 1468 (Dunlap), which it cites but does not discuss in depth. The Court of Appeal in Dunlap faced the same question we decide today: whether a CLETS computer printout was admissible under section 1280. The Dunlap court held in the affirmative: “Nothing in the statutory provisions expressly directs the Department of Justice to record information received from reporting agencies within any particular time period. However, a duty to record the information within a short period after its receipt can be reasonably inferred. The entire statutory scheme for recording and reporting criminal offender record information was enacted in light of legislative findings and declarations, including ‘[t]hat policing agencies and courts require speedy access to information concerning all felony and selected misdemeanor arrests and final dispositions of such cases.’ ([Pen. Code,] § 13100, subd. (c), italics added.) [Penal Code s]ections 13175 and 13176 require the Department of Justice to furnish information within 72 hours of a request therefor. Unless the Department of Justice records information from reporting agencies promptly, it will not be in [a] position to furnish complete information within the 72-hour period. [¶] In light of the statutory purpose and objective, and the 72-hour provisions in [Penal Code] sections 13175 and 13176, we conclude that the Department of Justice had a duty to record information as to each event shown on appellant’s rap sheet within a short period of its receipt from the reporting agency.. The presumption that duty was regularly performed supports the trial court’s implied finding that the Department of Justice recorded the information at or near the time of the recorded event.” (Dunlap, supra, at p. 1479.)
Like the majority, the Dunlap court fails to explain why requiring the Department to respond to requests for information within 72 hours has any effect on the time the Department must first enter the received information into the CLETS computer database. Penal Code section 13100 does not, as the Dunlap court inferred, require the Department to respond to a request with complete, up-to-the-minute information. Instead, that section merely *143 recites a legislative finding that law enforcement agencies need “accurate and reasonably complete criminal offender record information” (Pen. Code, § 13100, subd. (a)) and that the “recording, reporting, storage, analysis, and dissemination of criminal offender record information in this state must be made more uniform and efficient . . .” (id., subd. (e)). Contrary to the conclusion of the Dunlap court (a conclusion the majority also draws), the law imposes no legal duty on the Department to record conviction information within 72 hours—or any other “short period”—of receipt. (Dunlap, supra, 18 Cal.App.4th at p. 1479.)
This flaw in Dunlap's reasoning was recognized by Justice Jefferson in his treatise on evidence law. He writes: “With regard to the second requirement of [Evidence Code] § 1280, the Dunlap court was quick to draw the conclusion that the entries on the rap sheet were made at or near the time of the act, condition, or event, as required by [Evidence Code] § 1280, based on inferences that the appellate court drew from statutes concerning the recording and reporting of a person’s criminal history. The court glossed over the fact that there is no statutory requirement that the Department of Justice record information received from reporting agencies within any particular time period.” (1 Jefferson, Cal. Evidence Benchbook, supra, § 5.11, p. 135, italics added.)
Nor is the majority’s result saved by its observation that the conviction information to be recorded into the CLETS computer database “does not depend on memory, but simply involves a transfer of information from one form of storage—the disposition reports—to another—the CLETS database.” (Maj. opn., ante, at p. 128.) To begin with, the majority cites no California authority supporting its novel view that section 1280, subdivision (b)’s requirement the writing be made “at or near the time of the act, condition, or event” (italics added) may be satisfied by a writing made remote in time, so long as the circumstances of the writing indicate its overall trustworthiness.[6] (Cf. § 1280, subd. (c) [setting forth a separate requirement conditioning admissibility on a showing that the “sources of information and method and time of preparation [of the evidence] were such as to indicate its trustworthiness" (italics added)].)
The lack of any state authority for this line of reasoning aside, that the conviction information is not recorded into the CLETS computer database from memory is simply not relevant to the temporal inquiry required by *144 section 1280, subdivision (b). That is, even were we to conclude the method of recording (moving transcribed information from one written form to another) indicates an acceptable level of trustworthiness, that conclusion still tells us nothing about when the writing was made. Without such information, we cannot conclude the evidence satisfies the requirement the writing be made “at or near the time of the act, condition, or event.” (§ 1280, subd. (b).)
There being no evidence to support the trial court’s finding the writing, as evidenced by the CLETS computer printout (see ante, p. 139, fn. 3), was made “at or near the time of the act, condition, or event” (§ 1280, subd. (b)), I conclude the trial court abused its discretion in ruling the CLETS computer printout was an official record excepted from the hearsay rule.
II
The People also attempted to prove defendant’s prior convictions by introducing a computer printout from the Personal History Index (PHI), a computer database maintained by the Los Angeles County Sheriff’s Department. The majority’s rationale for concluding the trial court did not abuse its discretion in admitting the PHI computer printout is flimsier even than its reasoning with respect to the CLETS printout. None of the statutes identified by the majority speak to when the sheriff’s department must enter conviction information into its own computer database, a database the Legislature does not require the sheriff’s department to maintain. I suspect the sheriff’s department would be surprised to learn that Penal Code section 13100 imposes on it a legal duty to record conviction information within 72 hours of a criminal defendant’s conviction.
There being no duty to record the information into the PHI database near the time of the conviction, no presumption can arise of an official duty regularly performed. It follows the trial court had before it no evidence from which it could have concluded the PHI computer printout was written “at or near the time of the . . . [conviction]”; the court thus abused its discretion by so finding.
III
By approving the trial court’s evidentiary ruling in this case, the majority provides an unwarranted shortcut around a statutorily authorized, specific and convenient method of proving a criminal offender’s prior felony convictions. Penal Code section 969b sets forth what is essentially a special official records hearsay exception applicable to the proof of prior convictions in *145 criminal cases. It provides that to prove prior felony convictions or service of prison terms, “the records or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence.” (Pen. Code, § 969b.) Use of such records, while not the sole manner of proof available to the People, is the “common method of proof’ in such situations (see 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1528, p. 1822) and provides an easy and effective way to prove an offender’s prior felony convictions.
We should not be so sanguine about the accuracy of a computer’s output. Indeed, as the majority admits, the Department has, in another context, expressed concern over the accuracy of the CLETS computer system absent some way to pair it with a fingerprint identification system. The Department’s finding that searching its CLETS database using names paired with either Social Security numbers or driver’s license numbers still resulted in an error rate of 10 percent (maj. opn., ante, at p. 133), is disturbing. Relying on a document from a system with such an error rate is certainly an unacceptable basis for a sentence that, in this case, will run the rest of this defendant’s natural life.
It takes no great imagination to see how inaccuracies in the CLETS database can harm a typical criminal defendant. A number of things can occur following a felony conviction that can operate to eliminate the conviction, including deferring entry of judgment pending successful completion of counseling for child abuse or neglect (Pen. Code, § 1000.12) or of a drug diversion program (id., § 1000 et seq.), or reversal of the conviction on appeal. Delay in recording information relating to postconviction events could result in a printout from the CLETS database that erroneously shows the defendant as having suffered a felony conviction, rendering the defendant vulnerable to an improperly enhanced sentence.
Turning one last time to the views of Justice Jefferson: “Law enforcement has numerous resources. The courts should not be put in the position of having to infer all of the requirements for admission of a rap sheet from statutory presumptions and judicial notice. Rap sheets are generally inferior to court and prison records, and should be subjected to greater scrutiny than were the records in Dunlap.” (1 Jefferson, Cal. Evidence Benchbook, supra, § 5.11, p. 135.)
*146 I would reverse the decision of the Court of Appeal.
Kennard, J., concurred.

All statutory references are to the Evidence Code unless otherwise stated.

This is the version of section 1280 as amended in 1996. (Stats. 1996, ch. 642, § 4.) Although defendant committed his crimes in 1994, and was tried in 1995, I agree with the majority that the 1996 statutory amendment “did not, as defendant suggests, alter the section’s substance or meaning.” (Maj. opn., ante, at p. 126.)

I agree with the majority that the “writing” to which section 1280 refers in this context means the initial entry of the conviction information into the computer database, not the retrieval and printing of the information from the database. (Maj. opn., ante, at p. 126; see Aguimatang v. California State Lottery (1991) 234 Cal.App.3d 769, 798 [286 Cal.Rptr. 57].)

With these conclusions, I do not, as the majority supposes, “answer[] the wrong question.” (Maj. opn., ante, at p. 128, fn. 7.) I merely pose a hypothetical example to illustrate that the Legislature’s intention a database of criminal offender record information be created that is “accurate and reasonably complete” is not the same thing as the Legislature’s imposing a statutory duty on the Department to enter conviction information into the CLETS database “at or near the time of the [conviction].” As noted earlier in this dissenting opinion, I apply the proper standard, namely, whether the trial court abused its discretion. I simply conclude the proponent of the CLETS computer printout failed to present any evidence demonstrating that the information in the printout was written “at or near the time of the . . . event[s]’’ the printout purported to prove, namely, defendant’s prior felony convictions. Lacking such evidence, the trial court’s ruling the printout fell within section 1280’s hearsay exception was an abuse of discretion.

The majority apparently recognizes the problem, stating that “[t]he statutes are less specific regarding the Department’s duty to enter the criminal information it receives into the CLETS database.” (Maj. opn., ante, at p. 127, italics added.) Indeed, the statutes are so lacking in specificity that I can find no obligation at all requiring the Department to enter conviction information at any particular time. If the Department were to fail to enter conviction information into the CLETS computer database for several months after receiving it, the most one could say would be the Department was not fulfilling the Legislature’s expectations. Had the Legislature intended to impose on the Department a time limit for entering conviction data into the CLETS computer database, it certainly knew how to do that.

If this is not the logical effect of the majority’s reliance on the fact that the information is not recorded into the CLETS computer database from memory (see maj. opn., ante, at p. 128), it is unclear to me what significance the majority places on this factor at all.